IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

FILED
APR - 2 2007
CLERK OF CIRCUIT COURT #4
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

RITA FOHNE,            )
                       )
     Plaintiff,        )
                       )
vs.                    )
                       )
PFIZER INC.,           )   Cause No. 07-L-310
  Serve: CT Corporation System )
  208 S. LaSalle St., Suite 814 )
  Chicago, IL 60604    )
                       )
     Defendant.        )

### PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, GOLDENBERG HELLER ANTOGNOLI ROWLAND SHORT & GORI, P.C., and on behalf of the above-named Plaintiff files this Complaint complaining of Product Defendant for cause of action would respectfully show this Honorable Court the following:

### THE PARTIES

1. Rita Fohne, Plaintiff herein, is a resident of Lebanon, Illinois. Plaintiff brings this action to recover for personal injuries Plaintiff sustained as a result of ingestion of and exposure to Defendant's drug products BEXTRA.

2. Defendant PFIZER INC. (hereinafter "Pfizer") is a Delaware corporation, and at all times relevant hereto Pfizer was in the business of marketing, selling and distributing the pharmaceutical product Bextra (Valdecoxib). Pfizer is licensed and registered to do business in Illinois and may be served through its agent: CT Corporation, 208 So. LaSalle St., Suite 814, Chicago, Illinois 60604.


DEFENDANT'S EXHIBIT A

## DISCOVERY RULE AND FRAUDULENT CONCEALMENT

3.  The nature of Plaintiff's injuries and the relationship to Bextra use were inherently undiscoverable; and, consequently, the discovery rule should be applied to toll the running of the statute of limitations until Plaintiff knew or through the exercise of reasonable care and diligence should have known of the existence of potential claims against Defendant.

4.  Plaintiff did not discover, and through the exercise of reasonable care and due diligence, could not have discovered, the true nature of Plaintiff's injuries earlier, nor could Plaintiff have discovered that Plaintiff's injuries were due to the negligent action of the manufacturers of Bextra until Pfizer pulled Bextra off the market on April 7, 2005.

5.  Plaintiff did not discover, and through the exercise of reasonable care and due diligence, could not have discovered, the true nature of Plaintiff's injuries earlier, nor could Plaintiff have discovered that Plaintiff's injuries were due to the negligent action of the manufacturers of Bextra until Pfizer pulled Bextra off the market on April 7, 2005.

6.  The manufacturers of Bextra are estopped from relying on any statutes of limitation because of its fraudulent concealment and misrepresentation. Pfizer was under a duty to disclose the risks of cardiac and cerebrovascular events associated with the use of Bextra because this was nonpublic information over which Pharmaceutical Defendant had exclusive control, because the manufacturers knew that this information was not

readily available to Plaintiff or plaintiff's doctor and because this information was relevant to Plaintiff and plaintiff's doctor in deciding whether to use Bextra.

7.  Further, Plaintiff did not have knowledge of facts that would lead a reasonable, prudent person to make inquiry to discovery of Defendant's tortuous conduct. Under appropriate application of the "discovery rule", Plaintiff's suit is filed within the applicable statutory limitations period. Moreover, Pharmaceutical Defendant fraudulently concealed from Plaintiff the nature of the injury and the connection between the injury and Defendant negligent acts in designing, manufacturing, and distributing Bextra. This fraudulent concealment tolls the statute of limitations for this action until Bextra was pulled off the market on April 7, 2005.

## JURISDICTION AND VENUE

8.  Defendant is subject to the *in personam* jurisdiction of this Court, and venue is proper herein, by virtue of the fact that Defendant did and continues to do business within the state of Illinois and committed torts in whole or in part in this state against Plaintiff, as more fully set forth herein. Defendant advertised in Illinois and Madison County, made material omissions and representations in this county, and breached warranties in this county.

9.  There is no federal subject matter jurisdiction because no federal question is raised.

## I. ALLEGATIONS AS TO BEXTRA

## BACKGROUND-BEXTRA

10. This action arises from the sale and distribution of Bextra (Valdecoxib).

Fohne 07-L-

Bextra is the brand name used by Defendant Pfizer to market and distribute Valdecoxib. Bextra has been proven to cause adverse cardiovascular effects including, but not limited to, heart attack and stroke.

11.     Pfizer during all the times mentioned herein has been engaged in the business of research, licensing, designing, formulating, compounding, testing, manufacturing, producing, processing, inspecting, distributing, marketing, labeling, promoting, packaging and advertising of the prescription drug known as Bextra for ingestion by consumers. Bextra was manufactured, sold, designed, supplied, prescribed, distributed, marketed and processed by Defendant, who was at all times acting through their servants, employees, representatives and agents, who placed Bextra in the market to be purchased and used by the public.

12.     Pfizer participated in, authorized and directed the production and promotion of Bextra when they knew, or with the exercise of reasonable care, should have known, of the hazards and dangerous propensities of Bextra and thereby actively participated in the tortious conduct which resulted in the injuries suffered by the Plaintiff.

13.     Pfizer obtained FDA approval for Bextra on November 19, 2001, for treatment of musculoskeletal joint pain associated with osteoarthritis, among other maladies. Pfizer encouraged the use of this drug in improper customers, misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects. Pfizer aggressively marketed this drug directly to the consuming public, although only available through prescription, through the use of various marketing mediums, including, but not limited to, print and television advertisements. Pfizer did this to increase sales and profits.

14. At all times relevant hereto, Pfizer actually knew of the defective nature of their product as herein set forth, yet continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by this product. Pfizer's conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill-will, recklessness, gross negligence or willful and intentional disregard to the consumers' rights.

15. Plaintiff, Rita Fohne, received a prescription for Bextra. Plaintiff took the drug as prescribed by a medical professional for at least six months, and suffered a heart attack and cardiovascular injuries due to clotting or thrombosis. Plaintiff's use of Bextra was the direct and proximate cause of the occurrence in question and the injuries at issue.

16. The damages sought herein are the direct and proximate result of Pfizer's wrongful conduct in connection with designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the prescription drug Bextra (Valdecoxib).

17. At all times relevant hereto, Pfizer was engaged in the business of designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the pharmaceutical drug Bextra (Valdecoxib) throughout the United States.

18. Had Pfizer properly disclosed the risks associated with using Bextra (Valdecoxib), Plaintiff would not have taken it for treatment of pain.

19. Plaintiff did not know of and did not even have the opportunity to know the potential connection between the use of Bextra (Valdecoxib) and Plaintiff injury until after the FDA issued its recommendation, and Pfizer voluntarily withdrew Bextra (Valdecoxib) on April 7, 2005.

20. At all relevant times, Plaintiff was ignorant of the dangerous nature of Bextra, and the adverse cardiovascular effects that could occur due to consumption of and exposure to Bextra.

## COUNT 1-COMMON LAW STRICT LIABILITY-
## AGAINST PFIZER

COMES NOW Plaintiff and for Count One of the complaint against Defendant Pfizer alleges:

21. The Plaintiff re-alleges and incorporates the foregoing allegations.

22. In addition to pleading negligence, Plaintiff pleads the doctrine of strict liability. Defendant is strictly liable to Plaintiff under Section 402A, Restatement (Second) of Torts, for the defective design of the Bextra. At the time Bextra was designed, manufactured and sold by said Defendant, safer alternative designs existed, which included designs other than those actually used, that had they been selected by said Defendant, would have prevented or significantly reduced the likelihood of Plaintiff's injuries, and such designs were both economically and technologically feasible at the time these products left the possession of said Defendant, and had they been used, would have not have impaired the utility of the product. Defendant's defectively designed drug was a producing cause of the occurrence in question and Plaintiff's injuries.

23. Defendant is strictly liable to Plaintiff under Section 402A, Restatement (Second) of Torts, for the defective marketing of Bextra. Defendant failed to provide adequate warnings and instructions for safe use of Bextra. Defendant's defectively marketed drug was a producing cause of the occurrence in question and Plaintiff's injuries.

24. Defendant Pfizer is also strictly liable to Plaintiff under Section 402B of the Restatement (Second) of Torts in misrepresenting to the public that its product was safe and without defect, which statement and representation was false and involved a material fact concerning the character of quality of the product in question, and upon which representations the consumer constructively relied, and which constituted a producing cause of the injury at issue.

25. Further, each of the above and foregoing acts or omissions of Defendant were more than momentary thoughtlessness, inadvertence, or error of judgment. Such acts or omissions constituted such entire want of care as to establish that the acts or omissions were the result of actual conscious indifference to the rights, safety, or welfare of the person or persons affected.

WHEREFORE, Plaintiff prays for judgment against Defendant Pfizer in a sum in excess of Fifty Thousand Dollars ($50,000.00), for such other relief as may be fair and reasonable under the circumstances and for their costs herein expended.

## COUNT 2–STRICT PRODUCTS LIABILITY

## FAILURE TO WARN:

## AGAINST PFIZER

COMES NOW Plaintiff and for Count Two against Defendant Pfizer alleges:

26. Plaintiff incorporates all allegations in the preceding paragraphs as if fully set forth in this Count.

27. he Bextra manufactured and supplied by Pfizer was unaccompanied by proper and adequate warnings regarding all adverse side effects associated with the use of Bextra, and the comparative severity and duration of the adverse effects. The warnings given by Pfizer did not accurately reflect the symptoms, type, scope or severity of the side effects.

28. Pfizer failed to perform adequate testing, analysis and studies prior to marketing Bextra. Such adequate testing, study or analysis would have shown that Bextra possessed serious life threatening side effects, with respect to which full and proper warnings accurately and fully reflecting symptoms, type of illness, scope and severity should have been given with respect to the use of Bextra.

29. Pfizer also failed to act properly on adverse reports it received about Bextra, and failed to properly study Bextra pre-market as well as post market and analyze and follow up on its studies.

30. Pfizer also failed to effectively warn users and physicians that numerous other methods of pain relievers, including Ibuprofen, Naproxen, and/or Mobic were safer.

31. Pfizer failed to give adequate post-marketing warnings or instructions for the use of Bextra because after Pfizer knew or should have known of the risk of injury from Bextra use, Pfizer failed to provide adequate warnings to users or consumers and continued to aggressively promote the product to doctors, hospitals, and directly to consumers.

32. As a direct and proximate result of Defendant's failure to warn of the potentially severe side effects of the Bextra products, as well as the other conduct mentioned in this

Count, Plaintiff has been damaged.

WHEREFORE, Plaintiff prays for judgment against Defendant Pfizer in a sum in excess of Fifty Thousand Dollars ($50,000.00), for such other relief as may be fair and reasonable under the circumstances and for their costs herein expended.

### COUNT 3- NEGLIGENCE AND GROSS NEGLIGENCE- AGAINST PFIZER

COMES NOW Plaintiff and for Count Three of the complaint against Defendant Pfizer, alleges:

33. The Plaintiff re-alleges and incorporates the foregoing allegations.

34. Plaintiff would further show that at all times material hereto, the manufacture, sale, design, supply, distribution, or prescription of Bextra with which Plaintiff came in contact, was under the exclusive control of the Defendant, their agents, servants and employees, and that had the Defendant herein not been guilty of negligence, the Plaintiff would not have sustained Plaintiff's injuries. Accordingly, the Plaintiff is entitled to recover from the Defendant under the doctrine of res ipsa loquitur.

35. The law imposed a duty on the Defendant, as a manufacturer and marketer of pharmaceutical drugs, to exercise reasonable care. The Defendant knew, or in the exercise of ordinary or reasonable care ought to have known, that Bextra it manufactured, sold, designed, supplied, distributed, promoted, or marketed was dangerous, unsafe, and highly harmful to Plaintiff's health, notwithstanding which:

    a. Defendant negligently failed to design a reasonably safe product;

    b. Defendant negligently placed Bextra into the market;

    c. Defendant negligently failed to remove Bextra from the market;

Fohne 07-L-

d. Defendant negligently failed to fund and conduct medical and scientific studies to determine the risks of the overall safety of Bextra, in the alternative, failed to heed the warnings and risks of Bextra;

e. Defendant negligently failed to conduct sufficient testing on Bextra that would have shown Bextra had serious side effects, including, but not limited to the cardiovascular events described above;

f. Defendant negligently failed to conduct adequate post-marketing surveillance to determine the overall safety of Bextra;

g. Defendant negligently failed to accurately disclose the results of their post-marketing surveillance to advise the Plaintiff, consumers, and the medical community of the aforementioned risks to individuals when the drugs were ingested;

h. Defendant negligently failed to investigate the adverse event reports relating to Bextra;

i. Defendant negligently marketed their products;

j. Defendant negligently failed to provide Plaintiff with visible, understandable warnings that were adequate to convey and alert Plaintiff the severity of the risks and serious thrombotic cardiovascular side effects of Bextra ingestion;

k. Defendant negligently failed to take any reasonable precautions or exercise reasonable care to warn Plaintiff of the potential risks and serious thrombotic and cardiovascular side effects of Bextra ingestion;

l. Defendant negligently failed to take any reasonable precautions or

exercise reasonable care to warn Plaintiff's health care providers of the potential risks and serious thrombotic and cardiovascular side effects of Bextra ingestion;

 m.  Defendant negligently failed to take any reasonable precautions or exercise reasonable care to warn the health care industry of the potential risks and serious thrombotic and cardiovascular side effects of Bextra ingestion.

 n.  Defendant negligently failed to provide adequate post-marketing warnings or instructions after the Defendant knew or should have known of the significant risks of personal injury and death as identified herein among other serious side effects from the use of Bextra;

 o.  Defendant negligently failed to warn Plaintiff that Bextra should not be used in conjunction with any risk factors for these adverse events such as a family history of ischemic heart disease, or risk factors for ischemic cardiovascular disease; and,

 p.  Defendant negligently failed to warn Plaintiff that they undertook the risk of adverse events and death relating to Bextra as described herein.

36.  The Defendant's acts of negligence, as described above but not limited to these specific acts, proximately caused the Plaintiff's injuries and the occurrence in question.

WHEREFORE, Plaintiff prays for judgment against Defendant Pfizer in a sum in excess of Fifty Thousand Dollars ($50,000.00), for such other relief as may be fair and reasonable under the circumstances and for their costs herein expended.

### COUNT 4- NEGLIGENCE- SALE OF PRODUCT- AGAINST PFIZER

COMES NOW Plaintiff and for Count Four of the Complaint against Defendant

Pfizer, alleges:

37. The Plaintiff re-alleges and incorporates the foregoing allegations.

38. Defendant, during some or all relevant times, manufactured, sold, marketed, and/or distributed Bextra that was supplied to the Plaintiff for use.

39. The Defendant had the duty, as product sellers, to exercise reasonable care for the safety of the Plaintiff.

40. These duties included the responsibility for the following safety and health matters relating to Bextra:

    a. the investigation of the health risks;

    b. writing and publishing adequate and timely precautionary product labels and other health and safety information;

    c. writing and publishing adequate and timely specifications and standards about the true risks of injury associated with the products;

    d. writing and publishing adequate and timely specifications and standards about the symptoms of such injuries

    e. writing and publishing adequate and timely specifications and standards about the scope of such injuries

    f. writing and publishing adequate and timely specifications and standards about the severity of the known risks associated with the products.

41. The Defendant knew, or in the exercise of reasonable care should have known, that Bextra would cause adverse cardiovascular effects to its consumers like the Plaintiff.

42. Defendant's negligent acts and omissions were the direct and proximate causes of the occurrence in question and Plaintiff's injuries and damages.

WHEREFORE, Plaintiff prays for judgment against Defendant Pfizer in a sum in excess of Fifty Thousand Dollars ($50,000.00), for such other relief as may be fair and reasonable under the circumstances and for their costs herein expended.

## COUNT 5 - BREACH OF WARRANTIES (EXPRESS and IMPLIED) AGAINST PFIZER

COMES NOW Plaintiff and for Count Five of the Complaint against Defendant Pfizer, alleges:

43. The Plaintiff re-alleges and incorporates the foregoing allegations.

44. Pfizer through descriptions, affirmations of fact, and promises relating to their Bextra drugs to the FDA, prescribing physicians, and the general public, including the Plaintiff, expressly warranted that Bextra was both safe and efficacious for its intended use.

45. These warranties came in the form of:

   a. Publicly made written and verbal assurances of the safety and efficacy of Bextra by Pfizer;

   b. Press releases, interviews and dissemination via the media of promotional information, for the sole purpose of which was to create an increased demand for Bextra, which failed to warn of the risks inherent to the ingestion of Bextra;

   c. Verbal assurances made by Pfizer regarding Bextra and the downplaying of any risk associated with the drug;

   d. False and misleading written information, supplied by Pfizer, and published in the Physician's Desk Reference on an annual basis, upon which physicians were forced to rely in prescribing Bextra during the period of Plaintiff's ingestion of Bextra

including, but not limited to, information relating to the recommended duration of the use of the drugs;

  e. Promotional pamphlets and brochures published and distributed by Pfizer and marketed directly to consumers, which contradicted the information that was set forth in the package insert and the Physician's Desk Reference; and

  f. Advertisements, including but not limited to direct to consumer advertising.

46. The documents referred to above were created by and at the direction of Defendant.

47. At the time of these express warranties, Pfizer had knowledge of the purpose for which Bextra was to be used and warranted it to be in all aspects safe, effective and proper for such purpose, when indeed it was not.

48. Pfizer knew and had reason to know that Bextra did not conform to these express representations in that Bextra is neither safe nor as effective as represented, and that Bextra produces serious adverse side effects.

49. As such, Pfizer's products were neither in conformity to the promises, descriptions or affirmations of fact made about Bextra nor adequately contained, packaged, labeled or fit for the ordinary purpose for which these goods were sold and used.

50. Pfizer breached these express warranties to Plaintiff in violation of the applicable provisions of the Uniform Commercial Code by:

  a. manufacturing, marketing, packaging, labeling and selling Bextra to Plaintiff in such a way that misstated the risks of injury, without warning or disclosure thereof by package or label of such risks to the Plaintiff or the prescribing physicians or pharmacist, and without modifying or excluding such express warranties;

  b. manufacturing, marketing, packaging, labeling, advertising and selling Bextra to Plaintiff, which failed to counteract the negative health effects and increased risks in a safe and permanent manner; and

  c. manufacturing, marketing, packaging, labeling, advertising, promoting and selling Bextra to Plaintiff, thereby causing the increased risk of serious physical injury and death, pain and suffering.

51. Pfizer was or should have been in possession of evidence demonstrating that Bextra causes serious side effects. Nevertheless, Pfizer continued to market Bextra by providing false and misleading information without regard to the safety and efficacy of Bextra.

52. Pfizer's actions, as described above, were performed willfully, intentionally and with reckless disregard for the rights of Plaintiff and the public.

WHEREFORE, Plaintiff prays for judgment against Defendant Pfizer in a sum in excess of Fifty Thousand Dollars ($50,000.00), for such other relief as may be fair and reasonable under the circumstances and for their costs herein expended.

### COUNT 6- COMMON LAW FRAUD- AGAINST PFIZER

COMES NOW Plaintiff and for Count Six of the Complaint against Defendant Pfizer, alleges:

53. Plaintiff re-alleges and incorporates the foregoing allegations.

54. Pfizer, at all relevant times, made false representations and omissions to Plaintiff and other members of the public, including but not limited to, that Bextra was safe, had been adequately tested to determine safety, and did not present life-threatening dangers.

55. These representations and omissions, as set forth in the above paragraphs, were

false. The true facts were that Bextra was not safe, had not been adequately tested, and had dangerous and life-threatening side effects.

56. When Pfizer made the representations, it knew them to be false, and said representations were made by Pfizer with the intent to deceive Plaintiff and/or Plaintiff's prescribing physicians and with the intent to induce plaintiff to use the Bextra manufactured by Pfizer.

57. Plaintiff and/or Plaintiff's physicians reasonably relying upon the false representations and omissions, Plaintiff's physicians prescribed Bextra, plaintiff used Bextra. Plaintiff would not have done so if he had known the true facts. In using Bextra, Plaintiff exercised ordinary care.

58. As a direct and proximate result of the aforesaid fraudulent conduct, Pfizer caused Plaintiff to suffer the damages and injuries herein alleged.

WHEREFORE, Plaintiff prays for judgment against Defendant Pfizer in a sum in excess of Fifty Thousand Dollars ($50,000.00), for such other relief as may be fair and reasonable under the circumstances and for their costs herein expended.

## COUNT 7- NEGLIGENT MISREPRESENTATION – AGAINST PFIZER

COMES NOW Plaintiff and for Count Seven of the Complaint against Defendant Pfizer, alleges:

59. The Plaintiff re-alleges and incorporates the foregoing allegations.

60. At all relevant times, Pfizer knew, or should have known, that there were dangerous side effects resulting from the ingestion of Bextra (Valdecoxib).

61. Pfizer knew or reasonably should have known that consumers such as Plaintiff would not have known about the increased of heart attack associated with the injection of

Bextra (Valdecoxib).

62. Pfizer, armed with the knowledge stated in the preceding two paragraphs, preceded with the design, production, manufacture, promotion, advertising, and sale of Bextra (Valdecoxib) without adequate warning of the side effects and dangerous risks to the consuming public including Plaintiff.

63. The representations were made either without knowing of the truth or falsity of the representations or knew or should have known that the representations being made were false and, therefore, Defendant failed to exercise reasonable care in making the representations in the scope and course of their employment in marketing Bextra to individual consumers, Plaintiff's treating physicians, hospitals, and other health care providers.

64. Pfizer intended for Plaintiff and/or Plaintiff's treating physicians to rely upon the material misrepresentations to induce them to initially prescribe Bextra and continue Plaintiff on Bextra.

65. Plaintiff justifiably relied on the representations which were made directly to Plaintiff or Plaintiff's treating physicians, with Pfizer knowing that Plaintiff was in a limited group who Pfizer knew would rely upon the information.

66. As a direct result of Pfizer's negligent misrepresentation, personal injuries and actual damages in an amount to be proved at trial. The negligent misrepresentations caused or substantially contributed to cause Plaintiff's damages.

WHEREFORE, Plaintiff prays for judgment against Defendant Pfizer in a sum in excess of Fifty Thousand Dollars ($50,000.00), for such other relief as may be fair and reasonable under the circumstances and for their costs herein expended.

Fohne 07-L-

## COUNT 8-DECEPTIVE TRADE PRACTICES ACT- AGAINST PFIZER

COMES NOW Plaintiff and for Count Eight of the complaint against Defendant Pfizer, alleges:

67. The Plaintiff re-alleges and incorporates all the foregoing allegations.

68. Plaintiff brings this action pursuant to 815 ILCS 505, et seq. (The Illinois Consumer Fraud and Deceptive Practices Act), in that he purchased and used Bextra for Plaintiff's personal use and thereby suffered ascertainable loss as a result of Pfizer's actions in violation of the Illinois consumer fraud statute.

69. Unfair or deceptive acts or practices are defined and declared unlawful in Illinois. The unfair or deceptive acts or practices as defined in the statute include, "the use of any deception, fraud, false pretense, false promise, misrepresentation or concealment, suppression or omission of any material fact . . . in the conduct of any trade or commerce."

70. Pfizer violated the Act by its use of false and misleading misrepresentations or omissions of material fact in connection with the sale of Bextra. Pfizer communicated the purported benefits of Bextra, while failing to disclose the serious and dangerous side effects related to the use of its product, and in fact actually concealing from health care providers the adverse cardiovascular effects of Bextra.

WHEREFORE, Plaintiff prays for judgment against Defendant Pfizer in a sum in excess of Fifty Thousand Dollars ($50,000.00), for such other relief as may be fair and reasonable under the circumstances and for their costs herein expended.

### PRAYER FOR RELIEF AS TO ALL COUNTS

WHEREFORE, Plaintiff requests that this Court enter a judgment against the Defendant and in favor of the Plaintiff, and to award the following relief:

Fohne 07-L-

      a. General damages in the sum in excess of the jurisdictional minimum of this Court;

      b. Compensatory damages, including past, present, and future physical pain and suffering, loss of earning capacity, disfigurement, physical impairment, and medical care expenses;

      c. Consequential Damages;

      d. Costs including, but not limited to, discretionary Court costs of this cause, and those costs available under the law, as well as expert fees and attorney fees and expenses, and costs of this action; and,

      e. Such other relief as the Court deems just and proper.

Respectfully submitted,

**GOLDENBERG HELLER ANTOGNOLI ROWLAND SHORT & GORI, P.C.**

By _(signature)_
Robert D. Rowland #6198915
Aaron K. Dickey #6281731
2227 S. State Route 157
P.O. Box 959
Edwardsville, IL 62025
618/656-5150 Telephone
618/656-6230 Facsimile

ATTORNEYS FOR PLAINTIFF

Fohne 07-L-